**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DR. PINA PATEL, | : | CIVIL ACTION NO. |
| 9465 Pine Creek Drive. | : | |
| Powell, OH 43065, | : | |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| OHIOHEALTH CORPORATION, | : | |
| C/O Keith P. Hartzell, Esq., | : | |
| Registered Agent, | : | |
| 3430 OhioHealth Parkway | : | |
| Columbus, OH 43202, | : | |
| | : | |
| and | : | |
| | : | |
| OHIOHEALTH PHYSICIAN GROUP, | : | |
| C/O Keith P. Hartzell, Esq., | : | |
| Registered Agent, | : | |
| 3430 OhioHealth Parkway | : | |
| Columbus, OH 43202, | : | |
| | : | |
| Defendant. | : | **JURY DEMAND ENDORSED HEREON** |

**COMPLAINT**

## I.    Preliminary Statement

1.    This action seeks back pay; compensatory and punitive damages; declaratory, injunctive; and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Ohio Laws Against Discrimination committed when Defendants OhioHealth and OhioHealth Physician Group failed to promote Plaintiff to a position for which she was the most qualified applicant and, instead, promoted white, non-minority, and/or male employees over her with a motivating factor or the but-for cause of her non-selection being

1

her race, sex, and/or national origin and/or an act of retaliation – taken at the first opportunity – against her protected activity in reporting discriminatory pay practices based on her race, sex, and/or national origin. In addition to failing to promote Plaintiff, Defendants also failed to pay her for on-call work when it routinely paid white, non-minority, and/or male employees for engaging in the same on-call work with a motivating factor or the but-for cause of this lack of pay being her race, sex, and/or national origin.

## II.  Jurisdiction and Venue

2.  This action brings discrimination and retaliation claims against Defendants OhioHealth Corp. ("OhioHealth") and OhioHealth Physician Group ("OPG") under 42 U.S.C. § 1981; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; and the Ohio Laws Against Discrimination, R.C. Ch. 4112, pursuant to charge affidavits timely dual filed with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") and a Right to Sue letter that was issued in July 2025. The parties entered into a tolling agreement on August 21, 2025 (that tolled the statute of limitations beginning August 18, 2025), under which this Complaint is timely filed.

3.  This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights).

4.  Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202; Title VII; and OLAD.

5.  Compensatory and punitive damages may be awarded under 42 U.S.C. §§ 1981; Title VII; OLAD; and the common law of the State of Ohio.

6.  Costs and attorneys' fees may be awarded pursuant to Fed. R. Civ. P. 54; Title VII; 42 U.S.C. § 1988; and the common law of the State of Ohio.

7.      Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) and S.D. OH Civ. R. 82.1 because the acts and omissions giving rise to this action occurred in Franklin County, Ohio, where Defendant OhioHealth operates Riverside Methodist Hospital ("RMH") and many other medical centers and hospitals and where Defendants jointly employ Plaintiff at all times material to this Complaint.

## III.      Parties

8.      Plaintiff Dr. Pina Patel ("Dr. Patel"), who began working for Defendant OhioHealth Physician Group and Defendant OhioHealth Corp. in 2018, is an Indian woman who graduated from medical school at The Ohio State University College of Medicine and Public Health in 2005, completed her residency in Emergency Medicine at the Harvard-Affiliated Emergency Medicine Residency at Brigham and Women's Hospital and Massachusetts General Hospital in 2009, and completed her fellowship at The Ohio State University Hospitals in Hospice and Palliative Medicine in 2015.

9.      Defendant OhioHealth Corporation is a family of non-profit, faith-based hospitals and healthcare organizations that owns Defendant OhioHealth Physician Group and has been servicing patients since 1891. OhioHealth employs over 35,000 associates at its numerous hospitals and healthcare facilities throughout Ohio, including the facilities in which Plaintiff works; OhioHealth, who jointly employs Plaintiff with Defendant OPG, is an employer covered under Title VII; 42 U.S.C. § 1981; and OLAD.

10.      Defendant OhioHealth Physician Group ("OPG") is a medical group practice consisting of primary care physicians and specialists within OhioHealth Corporation, a family of non-profit, faith-based hospitals and healthcare organizations that owns OPG and has been servicing patients since 1891. OhioHealth employs over 35,000 associates at its numerous

3

hospitals and healthcare facilities throughout Ohio, including the facilities in which Plaintiff works; OhioHealth Physician Group specifically includes over 1,300 physicians and 1,000 advanced practice providers. OPG, who jointly employs Plaintiff with Defendant OhioHealth, is an employer covered under Title VII; 42 U.S.C. § 1981; and OLAD.

**IV.    Facts**

11.    OhioHealth operates three hospitals in the Columbus area, Riverside Methodist Hospital, Grant Medical Center, and Doctors Hospital, as well as OhioHealth Hospice House inpatient hospice unit (prior to January 2026 referred to as Kobacker House), in which OhioHealth Physicians Group employs many of its physicians and advanced practice providers.

12.    Roughly 68% of OhioHealth's total employee headcount are women, and 28% are non-white employees.

13.    Despite the high representation of female employees, OhioHealth's leadership operates as a stereotypical "boys club."

14.    OhioHealth has thirty-six (36) system chief physician positions throughout its various hospitals and departments.

15.    Of those thirty-six chief physician positions, only twelve (33%) are occupied by female physicians.

16.    Of the twelve female chief physicians, two are chiefs in Defendant's Women's Health Departments – departments that are overwhelmingly staffed by female physicians.

17.    Another two female chief physicians work in Family Medicine and Pediatrics, which are also predominantly female fields of medicine.

18.     At Riverside Methodist Hospital ("RMH"), where Dr. Patel works through OPG, in its 95-year history, only three women have held the title of Medical Staff President, with the most recent female Medical Staff President, Dr. Marian Schuda, serving from 1997-1998.

19.     In the past twenty-eight years, only men have served in this top medical role at RMH.

20.     Dr. Patel attended medical school at The Ohio State University College of Medicine and Public Health, earning her MD in 2005.

21.     Dr. Patel completed her Residency at Brigham and Women's Hospital in Emergency Medicine in 2009 – one of Harvard Medical School's primary teaching hospitals – and a fellowship in Hospice and Palliative Medicine at The Ohio State University Hospitals in 2015.

22.     Dr. Patel earned her Board Certifications in Emergency Medicine in 2010 and Hospice and Palliative Medicine in 2016. At the time, Dr. Patel was one of only 127 physicians in the country to ever be awarded these dual certifications.

23.     During her time in academics, Dr. Patel published as a first author in the Journal of Pain and Symptom Management (the premier journal in her field) and was elected as the National Chair for the Outpatient Palliative Special Interest Group in the American Academy of Hospice and Palliative Medicine, the largest professional organization in her field.

24.     Dr. Patel is the only physician in the history of OhioHealth to be both a Fellow of the American Academy of Hospice and Palliative Medicine (FAAHPM) and a Hospice Medical Director, Certified (HMDC).

25.     In addition to her strong academic credentials, Dr. Patel is also fluent in three languages – English, Spanish, and Gujarati – making her even more valuable to OhioHealth's diverse patients.

26. Dr. Patel joined OhioHealth as an Attending Physician on October 28, 2018, and, as of the date of this Complaint, is currently employed by OhioHealth in that role.

27. OhioHealth required Dr. Patel, like others, to work on-call duties.

28. The on-call duties, which included General Inpatient Admissions, required Dr. Patel and others to be near a computer for twenty-four hours to login to electronic medical records systems to enter hospitalized patient admission orders in a timely manner to comply with patient care rules and regulations.

29. OhioHealth routinely scheduled Dr. Patel for on-call work during her first several years of employment but did not compensate her for her on-call time.

30. Around July of 2022, Dr. Patel became aware that some of her colleagues were being paid for their on-call time when she was not, as she had been told of a Contract Addendum offered to certain colleagues in March of 2022.

31. At the time, in 2022, Dr. Patel had not seen the rumored Contract Addendum and did not know which individuals were being offered on-call pay or what the hourly rate was, but she had reason to believe that OhioHealth offered the Addendum to her younger, white, non-minority colleagues.

32. Sometime in 2022, Dr. Patel contacted Ms. Kelly (Hopkins) Boomsma, Defendant's then-Director of Specialty Operations, Oncology, about receiving extra pay for on-call duties but, though Ms. Boomsma acknowledged receipt of her request, no responsive action nor follow-up came from it.

33. In August 2023, Dr. Patel complained about the unequal distribution of on-call work, as Defendants asked her to work on-call more than any other similarly situated physicians, and the lack of pay for such work to OhioHealth's Vice President of Oncology, Dr. Praveen Dubey.

6

34. Dr. Patel explained to Dr. Dubey that Defendants were not fairly compensating her for the on-call time and that Defendants asked her to be on-call more than her colleagues.

35. Dr. Patel sent Dr. Dubey a document with explanations of the increased on-call burden without compensation, which he then forwarded to Ms. Boomsma.

36. Dr. Patel also informed Dr. Dubey that any physician in the OhioHealth Physician Group Hospice and Palliative Team could be asked to take the hospice General Inpatient Admission calls, but Defendants were not asking them to take those calls, meaning the work fell disproportionately on her.

37. However, Dr. Dubey did not follow up with Dr. Patel on her complaint, nor did anyone else.

38. Around December of 2023, Dr. Patel complained to Practice Manager for Hospice and Palliative Medicine, Nathan Crawford, that, as a woman of color, Defendants were treating her less favorably than white, non-minority male doctors. Specifically, Dr. Patel explained that Defendants were forcing her to take the most amount of uncompensated admission calls in the system (when accounting for her 0.8 FTE / take-home pay) and that Defendants paid her white, non-minority male colleagues for the on-call admissions they handled.

39. On January 3, 2024, Dr. Patel sent a detailed Excel spreadsheet to Ms. Boomsma that showed that, for her take-home pay as a 0.8 Full-Time Employee, she had the most Hospice on-call admission call shifts (which, at the time, included 13 weekend calls per year and 9-12 admission calls per month); this was far more weekend and on-call responsibility for any physician in the Columbus Area and even more than physicians who had a 1.0-1.2 FTE contract.

40. On January 19, 2024, Dr. Patel met with Dr. Dubey and Ms. Boomsma about the ongoing issues with her lack of on-call pay, in which she once again told them that she had to take

the most amount of uncompensated admitting calls in the system as a 0.8 FTE and explained that Defendants were paying younger white, non-minority males more for their on-call admissions.

41.     Based on Dr. Patel's complaint of pay disparity based on her race, sex, and/or national origin, a year later, in December 2024 – after she filed her Charge of Discrimination with the Equal Employment Opportunity Commission in October 2024 – Defendants offered her an on-call pay rate of $14.20 per hour during weeknight shifts, and $19.05 per hour for weekend shifts only (when she exceeded five call shifts per month).

42.     However, this rate was markedly lower than her similarly situated colleagues, Dr. Welsey Boyette (white male), Dr. Aaron Wood (white male), and Dr. Sarah Wittry (white female), who OhioHealth paid $19.05 per hour for on call work regardless of the day of the week (when they exceeded five call shifts per month).

43.     Dr. Boyette, Dr. Wood, and Dr. Wittry all shared the same supervisory team as Dr. Patel – Nathan Crawford, Mark Nelson, Kelly Boomsma, and Dr. Praveen Dubey.

44.     These similarly situated employees, like Dr. Patel, were all eligible to take OhioHealth Hospice inpatient admissions.

45.     As of September 2025, Dr. Patel has not been taking on-call admissions, but, during the time leading up to that, Dr. Patel was the only woman of color included in the group of physicians that were required to take the Hospice General Inpatient calls, and, to her knowledge, she was the only Attending Physician offered less pay for more on-call work based on her FTE.

46.     Defendants do not have a non-discriminatory legitimate reason to explain why these similarly situated white, non-minority doctors received 25% more pay than she did for on-call work; rather, Defendants offered her this lower rate based on her race, sex, and/or national origin, and/or as an act of retaliation for her complaints about the discriminatory pay disparity.

47.     In addition to being paid substantially less than her white, non-minority colleagues for the same work because of her race, sex, and/or national origin, and as an act of retaliation for her protected activity in complaining about the pay disparity based on her race, sex, and/or national origin, Defendants have also denied Dr. Patel a prestigious, lucrative promotion based on her race, sex, and/or national origin and/or protected activity.

48.     In 2024, Defendants posted an opening for the Chief of Palliative Medicine position that it designated as 50% clinical and 50% administrative.

49.     The role would have been lucrative for Dr. Patel, increasing her salary by approximately $103,000-$166,000 per year based on her FTE split, as there are many clinician leaders with a 1.0-1.3 total FTE.

50.     In January 2024, Dr. Patel met with Dr. Dubey about her application to the Chief role. Dr. Dubey shared that he was open to her application and would be willing to work with her. In that conversation, Dr. Patel told Dr. Dubey that she had a child with autism.

51.     In February 2024, OhioHealth interviewed Dr. Patel for the Chief position. During the panel interview, Ms. Boomsma asked, "You mentioned you have children, how would you handle the job with your family and other responsibilities?"

52.     Dr. Patel responded to Ms. Boomsma that she had already spoken to OhioHealth's Oncology Chief and former medical school classmate, Dr. Alfred Vargas (Asian male), who has three children, about how to handle the increased responsibilities of a chief position.

53.     Dr. Dubey cut in and said that Dr. Vargas "has a wife" to help him with his children, implying not only that women are primarily responsible for raising children but also that a woman without a man could not competently perform her job.

54. Based on knowledge and information, Dr. Patel does not believe that OhioHealth asked any other candidate for the position about handling family life with the responsibilities of childcare.

55. After the interviews in February 2024, OhioHealth offered the position to Dr. Owais Akmal (South Asian male); however, Dr. Akmal, the only candidate interviewed other than Dr. Patel, did not accept the offer from OhioHealth.

56. Defendants notified Dr. Patel that she would not be promoted to the Chief role on or around March 18, 2024.

57. When Dr. Akmal failed to respond to the offer over a period of approximately six weeks, on or around May 6, 2024, Dr. Patel met with Dr. Dubey to let him know that she was still interested in the position if Dr. Akmal had declined it.

58. On May 13, 2024, Dr. Patel again met with Dr. Dubey, who told her that the "doors were closed" for her in reference to the Chief position and that Defendants intended to launch a national search for someone to fill the position.

59. Dr. Patel inquired about the potential for her to serve as an interim Chief, but Defendants did not consider her for even the interim Chief position.

60. Rather than offer the position to Dr. Patel, in May 2024, Defendants elevated Dr. Sara Graham (white female) to serve as the interim Chief of Palliative Medicine. Dr. Graham declined the Chief position when asked to formally serve as the Chief.

61. The only justification that Defendant OhioHealth provided Dr. Patel for not offering her the position was that she did not have leadership experience.

62. Defendants listed "prior leadership experience" as a preferred requirement for the position, not a mandatory one.

63. However, prior to the Chief position becoming available, Defendants referred to the role as "Palliative Director," which Dr. Zachary Rossfeld (white male) held. At the time of his promotion, Dr. Rossfeld had only three years of Attending Physician experience and no formal leadership experience.

64. To Dr. Patel's knowledge, the job requirements were the exact same for Dr. Rossfeld, whose lack of formal leadership experience was not an issue the same way that Defendants claim it is for her.

65. In fact, Jean Halpin, President of Grant Medical Center, and most of Dr. Patel's Palliative colleagues believed she was the superior candidate, and their interview evaluations likely reflect this sentiment. Dr. Graham also believed Dr. Patel was qualified and deserved the Chief role, rating her highly in her evaluation during the hiring process.

66. Additionally, the week that Defendants denied Dr. Patel the Chief position, Riverside Palliative Medicine, including Dr. Sara Graham, had a meeting with Dr. Dubey, Ms. Boomsma, President of RMH, Mr. Robert Cercek, and VP of Medical Affairs, Dr. Michael Huang. Multiple RMH team members voiced concerns that Defendants did not offer Dr. Patel the role despite being highly qualified.

67. A nurse practitioner, Jennifer Berry, asked Mr. Cercek if he had seen Dr. Patel's CV – she stated that OhioHealth could do a national search and that they would not find someone better for the role.

68. Dr. Dubey has told others that he worked with at OhioHealth that he was not supportive of Dr. Patel's application because he had concerns about her family life.

69. For example, Dr. Dubey told Dr. Warren Wheeler (founding Medical Director of Hospice and Palliative at OhioHealth) that Dr. Patel "is a little hyper and with her child with disabilities, I do not see her willing or able to be traveling to all the OhioHealth hospitals in Ohio."

70. In her interview and application for the position, Dr. Patel never indicated that travel would be an issue for her.

71. This concern about her perceived inability to travel was Dr. Dubey's alone.

72. As of the filing of this Complaint, Dr. Graham still serves as the interim Chief of Palliative Medicine.

73. Dr. Patel continues to work at OhioHealth as an Attending Physician, earning substantially less than she would in the Chief position.

74. Since the denial of the Chief role, Dr. Patel has completed OhioHealth's Physician Leadership Academy (at the same time as Dr. Sara Graham) and the Columbus Medical Association Leadership Academy (in which Dr. Graham is actively enrolled), and, in April 2025, Dr. Patel was elected by her peers to serve as the Chair of Pain and Palliative at RMH.

75. As a direct and proximate result of Defendants' actions, Dr. Patel has suffered, and continues to suffer from, economic harm.

76. As a direct and proximate result of Defendants' actions, Dr. Patel has suffered, and continues to suffer from, reputational harm.

77. As a direct and proximate result of Defendants' actions, Dr. Patel has suffered, and continues to suffer from, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

## V. Claim for Relief: Discrimination and Retaliation in Violation of 42 U.S.C. § 1981

78. Paragraphs 1 through 77 above are realleged and incorporated herein.

12

79. By failing to promote Plaintiff when, but for her race, she would have been promoted, and, instated, hiring less qualified non-minority individuals for the Chief of Palliative Medicine role that she applied for, was more qualified for, and remains qualified for, Defendants have committed race discrimination in violation of 42 U.S.C. § 1981

80. By failing to pay Plaintiff and ultimately paying Plaintiff substantially less than similarly situated non-minority doctors for the same on-call work when, but for her race and/or as an act of retaliation for her complaints of pay disparity based on her race and the filing of her EEOC Charge of Discrimination, she would have been paid the same rate, Defendants have committed race discrimination in violation of 42 U.S.C. § 1981.

81. By refusing to promote Plaintiff in retaliation for her complaints of pay disparity based on her race and hiring less qualified non-minority individuals for the Chief of Palliative Medicine role that she applied for, was more qualified for, and remains qualified for, Defendants have committed retaliation in violation of 42 U.S.C. § 1981.

**<u>Claims for Relief: Discrimination and Retaliation in Violation of the Ohio Laws Against Discrimination and Title VII of the Civil Rights Act of 1964</u>**

82. Paragraphs 1 through 81 above are realleged and incorporated herein.

83. By refusing to promote Plaintiff when at least a motivating factor was her race, national origin, and/or sex and hiring less qualified non-minority and/or male individuals for the Chief of Palliative Medicine role that she applied for, was more qualified for, and remains qualified for, Defendants have violated Title VII of the Civil Rights Act of 1964 and the Ohio Laws Against Discrimination.

84. By refusing to promote Plaintiff in retaliation for her complaints of pay disparity based on her race, sex, and/or national origin and hiring less qualified non-minority and/or male individuals for the Chief of Palliative Medicine role that she applied for, was more qualified for,

and remains qualified for, Defendants have violated Title VII of the Civil Rights Act of 1964 and the Ohio Laws Against Discrimination.

85. By failing to pay Plaintiff for on-call work and ultimately paying Plaintiff substantially less than similarly situated non-minority and/or male doctors for the same on-call work when at least a motivating factor was her race, national origin, and/or sex and/or as an act of retaliation for her complaints of pay disparity based on her race, sex, and/or national origin and the filing of her EEOC Charge of Discrimination, Defendants have violated Title VII of the Civil Rights Act of 1964 and the Ohio Laws Against Discrimination.

## VI. **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

a. declare that Defendants have violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Ohio Laws Against Discrimination;

b. order such injunctive and equitable relief as will make Plaintiff whole for Defendants' violations, including awarding her the next available and acceptable Chief of Palliative Medicine position with full back pay and benefits, and pre- and post-judgment interest;

c. award compensatory and punitive damages in excess of $75,000;

d. award reasonable attorneys' fees and costs;

e. grant such other relief as the Court may deem appropriate.

Respectfully submitted:

By: */s/ Madeline J. Rettig*
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)

14

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255

Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
MARSHALL FORMAN & SCHLEIN, LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

## JURY DEMAND

Plaintiff requests a jury of eight (8) for all issues presented triable by jury.

By: */s/ Madeline J. Rettig*
Madeline J. Rettig (0098816)

15